LAW OFFICES OF TODD M. FRIEDMAN, P.C.
Todd M. Friedman, Esq. (216752)
tfriedman@attorneysforconsumers.com
Adrian R. Bacon, Esq. (280332)
abacon@attorneysforconsumers.com
324 S. Beverly Dr., #725
Beverly Hills, CA 90212
Telephone: (877) 206-4741
Facsimile: (866) 633-0228

*Attorneys for Plaintiff*,
Billy Warner

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILLY WARNER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>    Plaintiff,<br><br>    v.<br><br>TINDER, INC.,<br><br>    Defendant. | Case No.:<br><br><u>CLASS ACTION</u><br><br>COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17200, *ET SEQ.* AND CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17500, *ET SEQ.*<br><br>JURY TRIAL DEMANDED |

INTRODUCTION

1. BILLY WARNER ("Plaintiff"), by Plaintiff's attorneys, brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, to challenge the illegal actions TINDER, INC. ("Defendant") with regard to Defendant's misleading business practices and false advertising that caused Plaintiff damages.

2. Plaintiff makes these allegations on information and belief, with the exception

of those allegations that pertain to a Plaintiff, or to a Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

3. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

4. Unless otherwise stated, Plaintiff alleges that any violations by Defendant were knowing and intentional, and that Defendant did not maintain procedures reasonably adapted to avoid any such violation.

5. Unless otherwise indicated, the use of any Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that Defendant named.

## JURISDICTION AND VENUE

6. Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because Plaintiff, a resident of the State of California, seeks relief on behalf of a California class, which will result in at least one class member belonging to a different state than that of Defendant, a company whose principal place of business and State of Incorporation are in the State of California. In addition, the matter in controversy exceeds $5,000,000 exclusive of interest of costs. Therefore, both diversity jurisdiction and the damages threshold under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

7. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in the County of Los Angeles, State of California which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) Defendant conducted business within this judicial district at all times relevant.

8. Because Defendant conducts business within the State of California, personal jurisdiction is established.

///

## PARTIES

9. Plaintiff is an individual who resides in the County of Dade, State of Florida and a "person" as defined by Cal. Bus. & Prof. Code § 17201.

10. Plaintiff is informed and believes, and thereon alleges, that Defendant is a company whose State of Incorporation and principal place of business is in the State of California.

11. Plaintiff is informed and believes, and thereon alleges, that Defendant is a worldwide company that promotes itself as a free online dating application.

## FACTUAL ALLEGATIONS

12. At all times relevant, Plaintiff is an individual residing within the State of Florida.

13. Plaintiff is informed and believes, and thereon alleges, that at all time relevant, Defendant conducted business in the State of California.

14. Plaintiff is informed and believes, and thereon alleges, that at all time relevant, Defendant's sales of products and services are governed by the controlling law in the state in which they do business, which is California.

15. In or around early 2014, Plaintiff downloaded an "app" called Tinder from Defendant via iTunes, onto his iPhone mobile device.

16. Tinder promotes itself as a dating application for mobile phones, which promotes itself as follows:

"[Tinder] lets you find people who are within a certain radius of where you are located. You can see the profile pictures of people and their interests, and then qualify YES or NO.

If both qualify positive, Tinder enables a chat room to communicate with the person.

Tinder runs through your Facebook account, so please sign in with your Facebook data. Running is anonymous, so anything you do in Tinder be published on Facebook. Tinder take your public profile and photos and

      share your interests with others within the radius of Tinder away near where your you are.

      With Tinder you can have casual dating, meet the love of your life, or make friends. You decide!

      Tinder is free and is available on iPhone and Android phones." [1]

17. Tinder utilizes a user's location using the GPS built into their phone, then uses their Facebook information to create a profile. A Tinder profile is made up of a user's first name, age, photos and any pages they have 'liked' on Facebook.

18. Tinder then finds a user potential matches within a nearby geographical radius, and suggests potential matches, which a user has the option to like or pass.

19. Tinder's primary draw for consumers is a feature known as a "swipe," which is the act of swiping one's finger on their smart phone's touch screen within the Tinder app either left or right, in order to respectively approve or pass on a suggested potential match. If both users swipe left and "like" one another, Tinder will create a direct line of communication between the individuals, and allow them to start messaging one another.

20. In downloading the Tinder app, Plaintiff was informed, by various advertisements, promotions, and websites that Defendant's app was a "free online dating app." Defendant holds itself out to be free on its own website, stating "Tinder is free and is available on iPhone and Android phones."[2]

21. Tinder's advertisement and promotions through the iTunes store promotes Tinder as "free" and states: "To download the free app Tinder by Tinder Inc., get iTunes now" As well as that it is a "free download."[3]

---

[1] See Tinder's own website at http://www.apptinder.com/.
[2] See http://www.apptinder.com/.
[3] See Tinder's advertisement offered through the Apple iTunes store at https://itunes.apple.com/us/app/tinder/id547702041?mt=8

22. Indeed, Tinder is universally advertised as "freeware"[4] and "free" software.[5]

23. A true and correct copy of the screenshot from Defendant's ad on the Google App Store is shown as follows[6]:



24. Tinder has, up until now, allowed users to enjoy unlimited free swipes and has been a free app.

25. Tinder has never advertised, represented, or otherwise indicated to its customers, including Plaintiff, that the use of its services will require any form or payment. Rather, Defendant continuously held itself out to be a service that was entirely free to consumers, and engaged in a widespread advertising campaign that its services were free.

26. In agreeing to download and use Defendant's Tinder app, Plaintiff actually relied upon Defendant's representations that downloading the app would

---

[4] See Tinder's advertisement offered through a third party App store at http://downloads.tomsguide.com/Tinder,0301-52985.html
[5] See Tinder's advertisement offered through the Android store at http://xyo.net/android-app/tinder-e08Z.0I/
[6] https://play.google.com/store/apps/details?id=com.tinder&hl=en

permit Plaintiff to meaningfully use Defendant's app uninterrupted and for the foreseeable future, without payment of any additional fees or costs.

27. Said reliance is based upon the fact that Defendant did not warn Plaintiff, nor consumers similarly situated, that further fees may apply to ensure uninterrupted usage of Defendant's app, that Defendant's app may, at a later time, be rendered obsolete by Defendant's own affirmative business practices, as well as Defendant's representations that its product was "free".

28. Relying on these representations, Plaintiff and other class members became entrenched in the use of Defendant's Tinder app, foregoing the use of other online dating sites.

29. Defendant offered these free services with the goal in mind of enlisting a user base of tens or hundreds of millions of users, with the ultimate goal of later changing the rules of participation and deceptively and forcibly migrating a substantially percentage of its user based to a paid subscription model.

30. Had Defendant warned Plaintiff that additional fees may apply, Plaintiff would have reconsidered Plaintiff's use of Defendant's app.

31. Failure to disclose that additional fees may apply unfairly induced Plaintiff's downloading of Defendant's app, as he reasonably believed it to be a "free" service.

32. In agreeing to download and use Defendant's Tinder app, Plaintiff understood that his "payment" and Defendant's profit model would revolve around third party advertising such as banner ads, as is common in other free social networking sites and apps.

33. Following years of benefiting from Defendant's marketing, Defendant abruptly began informing consumers on or about March 2, 2015, that consumers would no longer be able to utilize Tinder for the functions which consumers had previously enjoyed free use.

34. According to Defendant, consumers that desired to continue using Tinder

uninterrupted are required to purchase an account-level subscription of Tinder Plus, at a cost of $2.99 per month.

35. Specifically, Defendant abruptly informed consumers, including Plaintiff, that they would no longer be able to enjoy unlimited swipes unless they signed up for a Tinder Plus account.

36. Defendant's abrupt policy change constitutes an unfair and deceptive trade practice, put into place to forcibly migrate users to paid subscription services, in order to receive the same services that had previously been provided and advertised as free of charge.

37. Defendant benefitted greatly from its false advertising scheme, by enlisting a massive user base under the guise of a "free" service, and then profiting off of their subsequent necessary purchases of subscription services.

38. Defendant gave no advance of this change to Plaintiff or other consumers.

39. In fact, Plaintiff learned first of this drastic business model change during the middle of his use of the Tinder App, when a screen popped up on his smart phone's screen on or about March 5, 2015 and stated "You're out of likes. Get more likes in 0:00:00. Get unlimited likes with Tinder Plus for $2.99/mo."

40. A true and correct copy of the screenshot from Plaintiff's iPhone showing this message is shown as follows:



41. Plaintiff was under the impression he already had the ability to get "unlimited swipes" without having to pay anything additionally to Defendant. Indeed, this was the "free" service that had been advertised to Plaintiff.

42. Having unlimited swipes is a necessary requirement for a user to meaningfully use the Tinder app, due in large part to the vast majority of users' matches being either fake users, escort services, or pornography bots.

43. For these reasons, the limited number of swipes Plaintiff was restricted to prevented him from effectively using the Tinder app at all.

44. In a classic bait and switch, Tinder utilized years of clever marketing, and advertised free social networking and online dating services to consumers, enticing them to become entrenched and "addicted"[7] to the Tinder app's

---

[7] http://www.huffingtonpost.com/2013/04/09/tinder-dating-app_n_3044472.html

system, only to unexpectedly take away the very services its customers relied on and enjoyed about the Tinder app, and forced them to unexpectedly pay to receive the same level of service they had originally signed up for upon downloading the Tinder app.

45. Upon being unexpectedly provided notice by Defendant that the continued use of Tinder would require additional payment, Plaintiff reluctantly purchased a one month subscription to the Tinder app, for $2.99.

46. Had Defendant abruptly, unfairly and deceptively induced Plaintiff into paying additional subscription fees to use its "free" services, Plaintiff would not have done so.

47. In so misleading Plaintiff and other similarly situated consumers, Defendant deceived Plaintiff and others into believing that the product they downloaded was no longer serviceable and available for use, as part of a widespread and systemic ruse to unfairly, fraudulently and unlawfully induce said consumers into purchasing paid subscription services rather than continue using the already downloaded, free and clear, Tinder app services, at considerable and previously undisclosed additional expense.

48. In inducing Plaintiff to download and use Defendant's app, Defendant did not inform Plaintiff that additional fees and a subscription to Tinder Pro would be required to receive a reasonably necessary number of regular swipes, rendering the Tinder App worthless to Plaintiff, had he not purchased a Tinder Pro subscription.

49. This misrepresentation and omission was material to Plaintiff's purchase of the Tinder application from Defendant.

50. Regardless of whether Defendant's representations to Plaintiff were true or untrue, such statements had a tendency to mislead Plaintiff and other similarly situated consumers, who relied upon such representations and either ceased use of the app (saving Defendant additional maintenance expense by way of

such misrepresentations), or were mislead into purchasing a Tinder Pro subscription at additional expense.

51. Such reliance was reasonable, in light of Defendant's misleading representations.

52. Furthermore, Plaintiff is not alone; Defendant has improperly induced thousands of other consumers to either discontinue usage of Defendant's app or pay a subscription fee. This act and omission constitutes unlawful, unfair, and fraudulent conduct under California's Unfair Competition Law, Business & Professions Code §17200 *et seq.* (the "UCL"); and California's False Advertising Law California Bus. & Prof. Code § 17500, et seq. (the "FAL").

53. Some examples of consumer complaints regarding Tinder's unfair, deceptive and unlawful and fraudulent conduct follow:

| |
|---|
| Sebastian Frohm March 2, 2015 – "I'm done The way you guys are trying to monetize the app is garbage. Really? I have to pay if I like too many people? Immediately uninstall. Thanks guys." |
| Danny B March 4, 2015 – "I 9 bucks a month? I'd rather have ads every 20 swipes than this money grab crap. You have lost a daily user. Goodbye" |
| Mike March 3, 2015 – "Stopped using I don't support companies who try to edge out older users by charging them more. Sorry Tinder not everyone on your app can be young and hot" |
| Arune Brekk March 3, 2015 – "Completely ruined by monetization and spam. Wow, just when I thought this app couldn't get any more annoying with the recent onslaught of spam accounts, you go and start charging for features. And charging twice as much for people over 30?! It's like you're trying to tank your app. Well, it was a good run while it lasted."[8] |

54. More consumer complaints regarding these deceptive practices are present on the Google App store, and other such online consumer forums.[9]

CLASS ALLEGATIONS

---

[8] http://img.wonderhowto.com/img/original/60/15/63561061001686/0/63561061001686 6015.jpg

[9] https://play.google.com/store/apps/details?id=com.tinder&hl=en

55. Plaintiff brings this action on his own behalf, and on behalf of all others similarly situated ("The Class").
56. Plaintiff represents, and is a member of, "The Class" defined as follows: (i) all persons in the State of California; (ii) that purchased Defendant's app, Tinder; (iii) at any time prior to March 2, 2015.
57. Defendant and their employees or agents are excluded from the Class.
58. Plaintiff does not know the exact number of persons in the Class, but believes them to be in the several hundreds, if not thousands, making joinder of all these actions impracticable.
59. The identity of the individual members is ascertainable through Defendant's and/or Defendant's agents' records or by public notice.
60. There is a well-defined community of interest in the questions of law and fact involved affecting the members of The Class. The questions of law and fact common to the Class predominates over questions affecting only individual class members, and include, but are not limited to, the following:
    a. Whether Defendant's practices are "unfair" as defined by California Business and Professions Code § 17200;
    b. Whether Defendant's practices are "illegal" as defined by California Business and Professions Code § 17200;
    c. Whether Defendant's practices are "fraudulent" as defined by California Business and Professions Code § 17200;
    d. Whether such practice violates California Business and Professions Code § 17200;
    e. Whether Defendant violated California Bus. & Prof. Code § 17500, et seq.
    f. Whether members of the Classes are entitled to declaratory relief; and,
    g. Whether members of the Classes are entitled to injunctive relief.
61. Plaintiff will fairly and adequately protect the interest of the Classes.

62. Plaintiff has retained counsel experienced in consumer class action litigation and in handling claims involving unlawful debt collection practices.

63. Plaintiff's claims are typical of the claims of the Class which all arise from the same operative facts involving Defendant's practices.

64. A class action is a superior method for the fair and efficient adjudication of this controversy.

65. Class-wide damages are essential to induce Defendant to comply with the federal and State laws alleged in the Complaint.

66. Class members are unlikely to prosecute such claims on an individual basis since the individual damages are small. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims, e.g., securities fraud.

67. Plaintiff and the Class seek injunctive relief against Defendant to prevent Defendant from forcing consumers to purchase a subscription for Defendant's app.

68. Defendant has acted on grounds generally applicable to the Class thereby making appropriate final declaratory relief with respect to the class as a whole.

69. Members of The Class are likely to unaware of their rights.

70. Plaintiff contemplates providing notice to the putative class members by direct mail in the form of a postcard and via publication.

71. Plaintiffs request certification of a hybrid class combining the elements of Fed. R. Civ. P. 23(b)(3) for monetary damages and Fed. R. Civ. P. 23(b)(2) for equitable relief.

FIRST CAUSE OF ACTION

Violation of the California False Advertising Act

(Cal. Bus. & Prof. Code §§ 17500 et seq.)

72. Plaintiff incorporates by reference each allegation set forth above.

73. Pursuant to California Business and Professions Code section 17500, et seq., it is unlawful to engage in advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

74. Defendant misled consumers by making misrepresentations and untrue statements about the Tinder App, namely, by instructing Plaintiff and other Class Members that "Tinder is free and is available on iPhone and Android phones," when in fat, additional subscription fees are necessary for consumers to meaningfully use the Tinder App. Defendant failed to disclose to consumers, at the time of their download of the Tinder app, that additional subscription fees would be required, or that they would not be able to receive unlimited swipes. Defendant knew that their representations and omissions were untrue and misleading, and deliberately made the aforementioned representations and omissions in order to deceive reasonable consumers like Plaintiff and other Class Members into paying more for something they reasonably believed they had already purchased.

75. As a direct and proximate result of Defendant's misleading and false advertising, Plaintiff and the other Class Members have suffered injury in fact and have lost money or property. Plaintiff reasonably relied upon Defendant's representations regarding the Tinder App, namely that the Ignition App was downloaded free and clear, and would continue to provide unlimited swipes free of charge without any additional payment. In reasonable reliance on Defendant's false advertisements, Plaintiff and other Class Members downloaded the Tinder App. In turn Plaintiff and other Class Members were provided with an App that turned out to be of significantly less value than what they were led to believe they had purchased, and therefore Plaintiff and other Class Members have suffered injury in fact.

76. The misleading and false advertising described herein presents a continuing

threat to Plaintiff and the Class Members in that Defendant persists and continues to engage in these practices, and will not cease doing so unless and until forced to do so by this Court. Defendant's conduct will continue to cause irreparable injury to consumers unless enjoined or restrained. Plaintiff is entitled to preliminary and permanent injunctive relief ordering Defendant to cease their false advertising, as well as disgorgement and restitution to Plaintiff and all Class Members Defendant's revenues associated with their false advertising, or such portion of those revenues as the Court may find equitable.

## SECOND CAUSE OF ACTION

### VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200

[Against All Defendants]

77. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

78. Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL. Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices. A plaintiff is required to provide evidence of a causal connection between a defendant's business practices and the alleged harm--that is, evidence that the defendant's conduct caused or was likely to cause substantial injury. It is insufficient for a plaintiff to show merely that the defendant's conduct created a risk of harm. Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

### UNFAIR

79. California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice." Defendant's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially

injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

80. In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

81. Here, Defendant's conduct has caused and continues to cause substantial injury to Plaintiff and members of the Class. Plaintiff and members of the Class have suffered injury in fact due to Defendant's unilateral decision to require subscription service for Defendant's app. Thus, Defendant's conduct has caused substantial injury to Plaintiff and the members of the Sub-Class.

82. Moreover, Defendant's conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any consumer. Such deception utilized by Defendant convinced Plaintiff and members of the Class that the Defendant's app was free and would not require a fee for its reasonable use. Thus, the injury suffered by Plaintiff and the members of the Sub-Class is not outweighed by any countervailing benefits to consumers.

83. Finally, the injury suffered by Plaintiff and members of the Sub-Class is not an injury that these consumers could reasonably have avoided. After Defendant, falsely and universally represented that Defendant's app was available for "free," these consumers suffered injury in fact due to Defendant's refusal to continue to make said app available to consumers that downloaded the app. As such, Defendant took advantage of Defendant's position of perceived power in order to deceive Plaintiff and the Class

members to make a payment toward an app only to then require a monthly payment after years of usage. Therefore, the injury suffered by Plaintiff and members of the Class is not an injury which these consumers could reasonably have avoided.

84. Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

### FRAUDULENT

85. California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice." In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

86. The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived. Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

87. Here, not only were Plaintiff and the Class members likely to be deceived, but these consumers were actually deceived by Defendant. Such deception is evidenced by the fact that Plaintiff agreed to pay download and use Defendant's "free" app only to be surprised by Defendant's new requirement for a monthly subscription payment. Plaintiff's reliance upon Defendant's deceptive statements is reasonable due to the unequal bargaining powers of Defendant and Plaintiff. For the same reason, it is likely that Defendant's fraudulent business practice would deceive other members of the public.

88. Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

### UNLAWFUL

89. California Business and Professions Code Section 17200, et seq. prohibits "any unlawful…business act or practice."

90. As explained above, Defendant deceived Plaintiff and other Class Members

by representing the Tinder App to be a "free" service that provided unlimited swipes, while also failing to disclose that the app would be rendered useless for free users by Defendant's own business decisions, at a later time, and that considerable subscription fees would be required to continue using the applications.

91. These representations and omissions by Defendant are therefore an "unlawful" business practice or act under Business and Professions Code Section 17200 et seq.

92. Defendant used false advertising, marketing, and misrepresentations to induce Plaintiff and Class Members to purchase the Tinder App. Had Defendant not falsely advertised, marketed or misrepresented the Tinder App, Plaintiff and Class Members would not have purchased the Class Products, or would have purchased an alternative and appropriate services that provided the services they believed they were purchasing. Defendant's conduct therefore caused and continues to cause economic harm to Plaintiff and Class Members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, and The Class Members pray for judgment as follows:

- Certifying the Class as requested herein;
- Providing such further relief as may be just and proper.

In addition, Plaintiff, and The Class Members pray for further judgment as follows:

- restitution of the funds improperly obtained by Defendant;
- Any and all statutory enhanced damages;
- All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;
- for equitable and injunctive and pursuant to California Business and Professions Code § 17203; and,

///

///

- any and all other relief that this Court deems just and proper.

Dated: March 6, 2015              **Law Offices of Todd M. Friedman, P.C.**

                                  By: /s/ Todd M. Friedman
                                      Todd M. Friedman, Esq.
                                      Attorneys for Plaintiff

TRIAL BY JURY

93. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff and The Class are entitled to, and demand, a trial by jury.

Dated: March 6, 2015              **Law Offices of Todd M. Friedman, P.C.**

                                  By: /s/ Todd M. Friedman
                                      Todd M. Friedman, Esq.
                                      Attorneys for Plaintiff