UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILLY WARNER, individually and on behalf of all others similarly situated, | ) CASE NO. CV 15-01668 MMM (AJWx) |
| Plaintiff | ) ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS |
| v. | ) |
| TINDER INC. | ) |
| Defendant. | ) |

On March 6, 2015, Billy Warner filed this putative class action against Tinder Inc. ("Tinder"),[1] and on March 11, he filed a first amended complaint.[2]  On April 9, 2015, the court entered an order on the parties' stipulation granting Warner leave to file a second amended complaint.[3]  He did so on April 20, 2015, alleging claims for violation of California's Unruh Civil Rights Act, California Civil Code § 51, *et seq.*; violation of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.*; violation of California's Automatic Purchase Renewal Statute ("APRS"), California Business & Professions Code § 17600; violation of California's False

---

[1]Complaint, Docket No. 1 (Mar. 6, 2015).

[2]First Amended Complaint, Docket No. 8 (Mar. 11, 2015).

[3]Order Granting Joint Stipulation, Docket No. 12 (Apr. 9, 2015).

Advertising Law ("FAL"), California Business & Professions Code § 17500; and violation of California's Unfair Competition Law ("UCL"), California Business & Professions Code § 17200.[4]

On May 20, 2015, Tinder filed a motion to dismiss the second amended complaint,[5] which Warner opposes.[6]  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the court finds defendant's motion appropriate for decision without oral argument; the hearing calendared for August 3, 2015, is therefore vacated, and the matter taken off calendar.

## I. FACTUAL BACKGROUND

### A.    The Tinder App

This case involves the online dating application known as Tinder (the "Tinder App").  The Tinder App is available for download from most application "stores" and is commonly used on iPhones and Android cellular telephones.[7]  Once downloaded, the application taps into a user's Facebook account and the information contained therein to generate a digital dating profile.[8]  A Tinder profile includes the user's first name, age, photographs, and any pages he or she has "liked" on Facebook.[9]  After a user's profile is established, he or she may begin "searching" for potential matches.[10]  Tinder utilizes the user's location, derived from the GPS device built into his or her phone, together with the user's profile, to suggest potential matches within a certain geographical radius.[11]

The hallmark of the Tinder App is the "swipe" feature, which allows users to swipe their finger

---

[4]Second Amended Complaint ("SAC"), Docket No. 13 (Apr. 20, 2015).

[5]Motion to Dismiss Second Amended Complaint ("Motion"), Docket No. 15 (May 20, 2015). See also Reply in Support of Motion to Dismiss ("Reply"), Docket No. 23 (July 20, 2015).

[6]Opposition to Motion to Dismiss Second Amended Complaint ("Opposition"), Docket No. 22 (July 13, 2014).

[7]SAC, ¶¶ 17, 22-24.

[8]*Id.*, ¶ 18.

[9]*Id.*

[10]*Id.*, ¶ 19.

[11]*Id.*, ¶¶ 18-19.

either left or right across the screen to indicate their interest, or lack thereof, in potential matches.[12] When Tinder suggests a potential match to a user, the user can swipe left, indicating a "like," or swipe right, indicating a "pass."[13]  If two users' swipes indicate mutual interest (i.e. both "swiped" left), the application opens a "direct line of communication between the users . . . allow[ing] them [to message] one another."[14]  Warner asserts that unlimited swiping is "a necessary requirement" to meaningful use of the Tinder App because "the vast majority of users' matches [are] either fake users, escort services, or pornography bots."[15]

Until early March 2015, it was allegedly free to download and use the Tinder App; users purportedly had access to an unlimited number of swipes.[16]  Thereafter, Tinder allegedly began to charge for unlimited access.  Warner asserts it created a "Tinder Plus" option, which gave users unlimited swipes for $2.99 a month.[17]  He contends Tinder gave users no advance notice of this change.[18] Additionally, on or about March 30, 2015, Tinder purportedly increased the price of Tinder Plus, charging $9.99/month for users under thirty years old and $19.99/month for users over thirty years old.[19]

### B.    Warner's Use of Tinder

Warner allegedly began using the Tinder App in early 2014, when he downloaded it to his iPhone via iTunes.[20]  At the time Warner downloaded the application, various advertisements,

---

[12]*Id.*, ¶ 20.

[13]*Id.*

[14]*Id.*

[15]*Id.*, ¶ 43.

[16]*Id.*, ¶¶ 25-26.

[17]*Id.*, ¶ 35.

[18]*Id.*, ¶ 39.

[19]*Id.*, ¶ 76. Warner cites an NPR story published on March 2, 2015, which stated that users in the United States would be charged $9.99 or $19.99 for Tinder Plus as of that week.  (*Id.* at 14 n.10).

[20]*Id.*, ¶ 16.

promotions, and websites, including Tinder's site, advised that Tinder was a "free online dating app."[21]

Warner purportedly used the Tinder App for free until March 2015.[22] On March 5, 2015, Warner was using the Tinder App when a pop-up message appeared on his phone stating: "You're out of likes. Get more likes in 0:00:00. Get unlimited likes with Tinder Plus for $2.99/mo."[23] Warner alleges that he reluctantly paid the monthly fee for a Tinder Plus membership.[24] Then on March 30, 2015, Warner allegedly received another message from the Tinder App asking if he wanted to "Get Plus for $19.99/mo."[25] This pop-up noted that Warner would get several services in addition to unlimited swipes, including the ability to change his location and "match with people anywhere in the world," to "[r]ewind [his] last swipe," and to turn off advertisements.[26] Warner paid the $19.99 fee as well, assuming he would no longer be billed $2.99/month.[27] Warner alleges instead that on April 9, 2015, the $2.99 membership fee was auto-debited despite the fact that he had "not authorize[d] [d]efendant to continue charging him for $2.99 for Tinder Plus."[28]

## II. DISCUSSION

### A.    Tinder's Request for Judicial Notice

Because Rule 12(b)(6) review is confined to the complaint, the court typically does not consider material outside the pleadings (e.g., facts presented in briefs, affidavits, or discovery materials) when deciding such a motion. *In re American Continental Corp./Lincoln Sav. & Loan*

---

[21]*Id.*, ¶¶ 21-23.

[22]*Id.*, ¶ 40.

[23]*Id.* The complaint contains a screen shot of the message Warner allegedly received from Tinder inviting him to sign up for Tinder Plus.  (*Id.*, ¶ 41.)

[24]*Id.*, ¶ 46.

[25]*Id.*, ¶ 57.

[26]*Id.*

[27]*Id.*, ¶¶ 58, 61.

[28]*Id.*, ¶ 60; see also *id.*, ¶ 59.

*Securities Litig.*, 102 F.3d 1524, 1537 (9th Cir. 1996).  It can, however, properly consider exhibits attached to the complaint and documents whose contents are alleged in the complaint but not attached, if their authenticity is not questioned.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

In addition, the court can consider  matters that are proper subjects of judicial notice under Rule 201 of the Federal Rules of Evidence.  *Id.* at 688-89; *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990); see also *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").[29]  The court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint" or documents that are proper subjects of judicial notice.  *Steckman v. Hart Brewing Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998); see also *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit").

Tinder asks the court to take judicial notice of seven documents.[30]  Specifically, it requests judicial notice of (1) a copy of the iTunes log-in page that appears after a consumer taps either the "Get Plus" or "Get Unlimited Likes" button shown in paragraphs 57 and 41 of the second amended complaint; (2) a copy of the "Confirm Subscription" page that opens after a consumer enter his or her Apple ID and password, which provides certain disclosures, and asks the consumer to either "Confirm" or "Cancel"; (3) a copy of the page that appears after the consumer clicks "Confirm" on Exhibit 2; (4) a true and correct copy of the confirmation email that is sent to the consumer

---

[29]Taking judicial notice of matters of public record does not convert a motion to dismiss into a motion for summary judgment. *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

[30]Request for Judicial Notice ("RJN"), Docket No. 16 (May 20, 2015).

immediately upon subscribing to Tinder Plus; (5) a copy of the page that opens after tapping the "Manage" button on Exhibit 3, which permits the user to turn off auto-renewal; (6) a copy of the pop-up message that appears when a consumer slides the auto-renewal toggle on Exhibit 5 to the right; and (7) a copy of the page that opens after the consumer has turned off auto-renewal.[31]

The court cannot judicially notice any of these documents, because their contents are neither generally known nor capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. FED.R.EVID. 201.  As noted, however, "[a] district court ruling on a motion to dismiss may [also] consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), superseded by statute on other grounds as recognized in *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 681 (9th Cir. 2006).  This is so even if plaintiff does not "explicitly allege the contents of th[e] document[s] in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint").

Tinder contends that the second amended complaint necessarily relies on the purported absence of these disclosures in alleging violations of the EFTA and APRS.  It asserts that each of the attached exhibits appears after a user sees the screenshots of the Tinder App that are incorporated in the complaint.  Even if this is true, the court need not consider the exhibits to grant Tinder's requested relief.  The court therefore declines to take the exhibits into account under the incorporation by reference doctrine.

## B.    Legal Standard Governing Motions to Dismiss Under Rule 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint.  A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory," or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica*

---

[31]*Id.* at 1-2.

*Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).  The court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995).

The court need not, however, accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations.  See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").  Thus, a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); see also *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)); *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief," citing *Iqbal* and *Twombly*).

### C.   Warner's FAL and UCL Claims

#### 1.   Legal Standard Governing UCL and FAL Claims

"The UCL prohibits 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.'" *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF (PVT), 2010 WL 2898284 *16 (N.D. Cal. July 21, 2010) (quoting Cal. Bus. & Prof. Code § 17200).  "'An act can be alleged to violate any or all of the three prongs of the UCL – unlawful, unfair, or fraudulent.'" *Id.* (quoting *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal.App.4th 1544, 1554 (2007)).  The law is "sweeping, embracing anything that can properly be called a business practice and at the same time is forbidden by law." *Cel-Tech Communications, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th

163, 180 (1999); see also *Palestini v. Homecomings Fin., LLC*, No. 10CV1049-MMA, 2010 WL 3339459, *9 (S.D. Cal. Aug. 23, 2010) (same).

"While the scope of conduct covered by the UCL is broad, its remedies are limited.  A UCL action is equitable in nature; damages cannot be recovered. . . . [U]nder the UCL, '[p]revailing plaintiffs are generally limited to injunctive relief and restitution.'"  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1144 (2003) (citing *Cel-Tech Communications*, 20 Cal.4th at 180) (second alteration original); *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 173 (2000) ("A UCL action is an equitable action by means of which a plaintiff may recover money or property obtained from the plaintiff . . . through unfair or unlawful business practices.  It is not an all-purpose substitute for a tort or contract action").

The FAL prohibits the dissemination of false or misleading statements in connection with advertising.  CAL. BUS. & PROF. CODE § 17500.[32]  "Section 17500 has been broadly construed to proscribe 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'"  *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663, 679 (2006) (quoting *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 951 (2002) (internal quotation marks omitted)).  In evaluating whether a statement is misleading, the court looks primarily to the words of the statement itself, and compares those words to the actual facts.  *Id.*

Like the UCL, the FAL provides for injunctive and restitutionary relief to a plaintiff who has

---

[32]Section 17500 provides: "It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."  CAL. BUS. & PROF. CODE § 17500.

1   been harmed by a violation of the statute.  See *Colgan*, 135 Cal.App.4th at 694, 701 ("The False

2   Advertising Law . . . authorize[s] a trial court to grant restitution to private litigants asserting claims

3   under those statutes. . . .  Section 17535 provides in relevant part: 'Any person, corporation, firm,

4   partnership, joint stock company, or any other association or organization which violates or proposes

5   to violate this chapter may be enjoined by any court of competent jurisdiction'"); see also CAL. BUS. &

6   PROF. CODE § 17535 ("Any person, corporation, firm, partnership, joint stock company, or any other

7   association or organization which violates or proposes to violate this chapter may be enjoined by any

8   court of competent jurisdiction").

9   **2.     Whether the FAL and UCL Claims Must Be Dismissed**

10   Tinder contends that Warner's FAL and UCL claims must be dismissed to the extent they are

11   based on "fraudulent" conduct because Warner fails plausibly to allege any misrepresentation that was

12   likely to deceive the public.[33]  The FAL claim alleges a discrete misrepresentation and omission; the

13   allegations of that claim are incorporated in the UCL claim.  Warner asserts that Tinder violated the

14   FAL and UCL by: (1) representing "that 'Tinder is free and is available on iPhone and Android phones,'

15   when in fa[c]t, additional subscription fees are necessary for consumers to meaningfully use the Tinder

16   App";[34] and (2) "fail[ing] to disclose to [Warner] or other consumers that it reserved the right to change

17   its price at any time and at its sole discretion," as evidenced by the fact that it "advertised the Tinder Pro

18   App as being $2.99 per month, and unilaterally changed the price to $19.99 per month after [Warner]

19   had purchased the subscription."[35]

20   To allege an FAL or UCL claim predicated on this representation and omission plausibly,

21   Warner must show that "members of the public [were] likely to be deceived."  *Williams v. Gerber*

22   *Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  The challenged conduct "is judged by the effect it

23   would have on a reasonable consumer."  *Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal.App.4th

24   

25   [33]Motion at 6-8.

26   [34]SAC, ¶ 120 ("Defendant misled consumers by making misrepresentations and untrue
27   statements about the Tinder App, namely, by instructing Plaintiff and other Class Members that 'Tinder
is free and is available on iPhone and Android phones,' when in fa[c]t, additional subscription fees are
necessary for consumers to meaningfully use the Tinder App").

28   [35]*Id.*, ¶¶ 122-23.

638, 645 (2008). "Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact that is not appropriate for resolution on the pleadings." *Williams*, 552 F.3d at 938–39. "However, the court may in certain circumstances consider the viability of the alleged consumer law claims based on its review of the [purportedly misleading representations]." *Jones v. ConAgra Foods, Inc*., 912 F.Supp.2d 889, 899 (N.D. Cal. 2012) (citing *Werbel ex rel. v. Pepsico, Inc*., No. CV 09–04456 SBA, 2010 WL 2673860, \*3 (N.D.Cal. July 2, 2010)). "Thus, where a court can conclude as a matter of law that members of the public are not likely to be deceived . . . , dismissal is appropriate." *Id*.

### 3.     Representation that the Tinder App is Free

Warner argues first that Tinder falsely represented "that 'Tinder is free and is available on iPhone and Android phones,' when in fa[c]t, additional subscription fees are necessary for consumers to meaningfully use the Tinder App."[36] The court agrees that this allegation fails plausibly to allege fraud or deception. Warner does not plead that the Tinder App is no longer free; he merely alleges that Tinder introduced two "account-level subscriptions" that afforded users unlimited swipes for fees of $2.99 and $19.99.[37] He asserts that the Tinder App previously allowed users unlimited swipes, and that users of the free version of the Tinder App are now given a limited number of swipes; he does not, however, allege that Tinder is now charging for the basic version of the Tinder App. Stated differently, he does not plausibly plead that, contrary to Tinder's representations, the Tinder App is not a "free online dating app[lication]."[38] Nor does he allege any facts suggesting Tinder advertised that users downloading the free version of Tinder would enjoy unlimited swipes, nor that such a benefit (if it was advertised) would "always" be free. See *Handy v. LogMeIn, Inc*., No. CV 14-01355 JLT, 2015 WL 1729681, \*7 (E.D. Cal. Apr. 15, 2015) ("Plaintiff fails to identify any representation made by Defendant that assured him that updates and bug-fixes would be provided by Defendant for any period of time"); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig*., 903 F.Supp.2d 942, 968 (S.D. Cal. 2012) (dismissing an FAL claim where "Sony never represented that the PSPs and PS3s would 'always'

---

[36]*Id*., ¶ 120.

[37]*Id*., ¶¶ 35, 57.

[38]*Id*., ¶ 21.

be able to access the internet and/or connect to other online services"). Thus, as presently alleged, the court cannot conclude that the purported representation would mislead an ordinary consumer. See *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 508 (2003) ("'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled").

Even had he adequately alleged a misrepresentation, moreover, Warner's FAL and UCL claims would still have to be dismissed to the extent they seek damages because Warner lacks standing to do so. "The UCL and FAL 'limit standing to individuals who suffer losses . . . that are eligible for restitution." *In re Apple & AT & T iPad Unlimited Data Plan Litig.*, 802 F.Supp.2d 1070, 1076 (N.D. Cal. 2011) (quoting *Buckland v. Threshold Enters., Ltd.*, 155 Cal.App.4th 798, 817, 819 (2007)). "Ordinarily when we say someone has 'lost' money we mean that he has parted, deliberately or otherwise, with some identifiable sum formerly belonging to him or subject to his control; it has passed out of his hands by some means, such as being spent or mislaid." *Silvaco Data Systems v. Intel Corp.*, 184 Cal.App.4th 210, 244 (2010).

Tinder argues, and the court agrees, that advertising the Tinder App as free did not cause Warner to lose any money because Warner does not allege that Tinder charged him money to download the Tinder App. "To show [entitlement] to restitution, a plaintiff must demonstrate that the defendant is in possession of money or property taken from [him or] her." See *Asghari v. Volkswagen Group of America, Inc.*, 42 F.Supp.3d 1306, 1324 (C.D. Cal. 2013); *Groupion, LLC v. Groupon, Inc.*, 859 F.Supp.2d 1067, 1083 (N.D. Cal. 2012) (holding that restitution was unavailable because plaintiff "ha[d] not submitted any evidence or . . . argument, to show that [defendant] obtained money from [plaintiff] or that [plaintiff] otherwise ha[d] any ownership interest [in] any of [defendant's] profits," citing *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663, 699 (2006) (a plaintiff can seek money or property as restitution only when the "money or property identified as belonging in good conscience to the plaintiff [can] clearly be traced to particular funds or property in the defendant's possession")); *Hill v. Opus Corp.*, 464 B.R. 361, 394 (C.D. Cal. 2011) (restitution is not available where the money claimed

11

by plaintiff cannot be "traced to any particular funds in [defendants'] possession"); see also *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1268 (1992) (when restitution is ordered, "defendant is asked to return something he wrongfully received; he is not asked to compensate the plaintiff for injury suffered as a result of his conduct").  Because Warner did not part with any money when he downloaded the Tinder App based on Tinder's representation that it was free, he lacks standing to pursue a restitution claim under the FAL and UCL.  This is true even to the extent he alleges that the "value" of the free application was diminished when swipes were reduced unless the user agreed to pay a fee.  Unless he parted with money as a result of the representation that the Tinder App was free, he lacks standing.  Because he does not allege that he did, his FAL and UCL claims are deficient for this reason as well, and must be dismissed.  Cf. *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F.Supp.2d 942, 966 (S.D. Cal. 2012) (service interruptions were not sufficient to confer standing).

### 4.    Omission Related to the Increase in Tinder Plus Pricing From $2.99 to $19.99

Warner next alleges that Tinder violated the FAL and the fraudulent prong of the UCL by "advertis[ing] [first that] the Tinder Pro App [w]as . . . $2.99 per month, and unilaterally chang[ing] the price to $19.99 per month after [he] had purchased the subscription."[39]  Warner asserts that Tinder "failed to disclose to [him] or other consumers that it reserved the right to change its price at any time and at its sole discretion, and this omission was material to [his] purchase of the Tinder Pro account for $2.99 per month."[40]  He pleads that he reluctantly agreed to purchase a one month subscription to Tinder Plus for $2.99 on March 5, 2015,[41] and contends that on or about March 30, 2015, he was prompted to "Get Plus for $19.99/Mo" despite having already agreed to pay $2.99 to subscribe to Tinder Plus. Warner agreed to pay the higher price.

Under California law, there are "four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2)

---

[39]*Id.*, ¶ 122.

[40]*Id.*, ¶ 123.

[41]*Id.*, ¶¶ 40, 46.

1   when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the

2   defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial

3   representations but also suppresses some material facts." *LiMandri v. Judkins*, 52 Cal.App.4th 326, 336

4   (1997) (quoting *Heliotis v. Schuman*, 181 Cal.App.3d 646, 651 (1986)).  Tinder does not address these

5   factors, nor does it discuss the materiality of the purported omission.  Thus, the court assumes without

6   deciding that Warner's complaint plausibly alleges that Tinder concealed material facts by "fail[ing] to

7   disclose to [him] or other consumers that it reserved the right to change its price at any time and at its

8   sole discretion, and [that] this omission was material to [his] purchase of the Tinder Pro account for

9   $2.99 per month."[42]

10       Even assuming the omission would plausibly misled a reasonable consumer, however, Warner

11   does not allege a cognizable injury in fact.  "Courts have held that being induced to purchase a product

12   one would not otherwise have purchased is not loss of money or property within the meaning of the

13   statute as long as one still receives the benefit of the bargain."  *Koh v. S.C. Johnson & Son, Inc*., No.

14   C–09–0927 RMW, 2010 WL 94265, *2 (N.D. Cal. Jan. 6, 2010); *Hall v. Time, Inc*., 158 Cal.App.4th

15   847, 854-55 (2008) (plaintiff lacked standing because, though plaintiff had "expended" money, he had

16   not "lost" money; "He did not allege he did not want the book, the book was unsatisfactory, or the book

17   was worth less than what he paid for it").  The Court of Appeal's decision in *Hall* is instructive.  There,

18   a customer obtained a book from a publisher for a "free trial period" but was eventually required to pay

19   for the book after the matter was turned over to a collections agency.  *Id*. at 851.  The customer filed a

20   UCL action, alleging that the publisher used misleading and deceitful tactics to obtain immediate

21   payment from customers despite touting the "free trial period."  *Id*. at 850-51.  The court held there was

22   no injury in fact, despite the fact that the customer eventually paid $29.51 for the book, because the

23   customer "did not allege he did not want the book, the book was unsatisfactory, or the book was worth

24   less than what he paid for it."  *Id*. at 855.

25       The same is true here.  Warner does not allege that he did not want Tinder Plus (at any price),

26   that Tinder Plus was unsatisfactory, or that Tinder Plus was worth less than what he paid for it.  He has

27   therefore not pled that he suffered a loss capable of restitution under the FAL or UCL. See *id*.  See also

28

---

[42]*Id*., ¶ 123.

*Klein v. Avis Rent a Car Sys. Inc.*, No. CV 08-0659 AHM (VBKx), 2009 WL 151521, *4 (C.D. Cal. Jan. 21, 2009) ("What Plaintiff has not alleged is that their conduct caused him to pay more than he would have had Defendants been licensed. . . .  The Court therefore grants the motion to dismiss the UCL claim, but gives Plaintiff leave to amend the allegations"); *Koh*, 2010 WL 94265 at *2 ("being induced to purchase a product one would not otherwise have purchased is not loss of money or property within the meaning of the statute as long as one still receives the benefit of the bargain"); *Medina v. Safe Guard Products*, 164 Cal.App.4th 105, 114 (2008) ("Medina has not alleged that he didn't want wheel and tire coverage in the first place, or that he was given unsatisfactory service or has had a claim denied, or that he paid more for the coverage than what it was worth because of the unlicensed status of Safe–Guard.  He hasn't suffered any loss *because* of Safe–Guard's unlicensed status").  Consequently, the FAL claim must be dismissed in its entirety, and the UCL claim must be dismissed to the extent premised on the purportedly false or misleading misrepresentations and omissions.

Tinder also argues, and the court agrees, that Warner's UCL claim fails to the extent it is based on the unlawful prong of the statute because he has not adequately alleged that Tinder engaged in any unlawful conduct.  This is because all of his substantive claims fail.  Where the predicate claims on which a plaintiff's UCL claim are based fail, the UCL claim fails as well.  See *Khan v. CitiMortgage, Inc.*, 975 F.Supp.2d 1127, 1146 (E.D. Cal. 2013) ("The FAC lacks facts of an unlawful, unfair or fraudulent business practices to support a UCL claim, despite Ms. Khan's unsubstantiated claims. . . .  As demonstrated throughout this order, the complaint's claims fail and thus cannot serve as a predicate violation for a UCL claim"); *Bejou v. Bank of Am., N.A.*, No. CV F 13–0125 LJO SMS, 2013 WL 1759126, *5 (E.D. Cal. Apr. 24, 2013) ("Reliance on other invalid claims fails to support a viable UCL claim").

For these reasons, both his UCL and FAL claims must be dismissed in full.

### 5.  Extraterritorial Application of UCL and FAL

Although Tinder does not raise the point, and the court does not dismiss on this basis as a result, the court notes that both the FAL and UCL claims fail for a more fundamental reason.  This is because California does not permit extraterritorial application of either statute.  "California's Supreme Court has

made clear that there is a strong presumption against the extra-territorial application of California law." *Ehret v. Uber Technologies, Inc*., No. C 14 0113 EMC, 2014 WL 4640170, *3 (N.D. Cal. Sept. 17, 2014). In *Sullivan v. Oracle Corp.*, 51 Cal.4th 1191 (2011), the Court reiterated this long-held rule:

> "However far the Legislature's power may theoretically extend, we presume the Legislature did not intend a statute to be 'operative, with respect to occurrences outside the state, . . . unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history.'" *Id.* at 1207 (quoting *Diamond Multimedia Systems, Inc. v. Superior Court,* 19 Cal.4th 1036, 1059 (1999) (internal citation and quotation marks omitted)).

In *Sullivan*, the California Supreme Court explicitly held that this presumption applied to the UCL, noting that "[n]either the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially," and concluding that the presumption against extraterritoriality "applies to the UCL in full force." *Id.*; *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal.App.4th 214, 222 (1999) ("[The UCL is not] applicable to claims of non-California residents injured by conduct occurring beyond California's borders"); see also *Badella v. Denior Marketing LLC*, No. C 10–03908 CRB, 2011 WL 5358400, *11 (N.D. Cal. Nov. 4, 2011) ("[T]he Court recognizes that extraterritorial application of the UCL is improper where non-residents of California raise claims based on conduct that allegedly occurred outside of the state," citing *Sullivan v. Oracle Corp*., 547 F.3d 1117, 1187 (9th Cir. 2008)). "Courts have [also] recognized that the FAL is limited to application in California." *In re Toyota Motor Corp*., 785 F.Supp.2d 883, 918 (C.D. Cal. 2011); *Churchill Village, L.L.C. v. Gen. Elec. Co.*, 169 F.Supp.2d 1119, 1127 (N.D. Cal. 2000) ("[T]he FA[L] contains language that could be interpreted to limit the statute's extraterritorial application. Section 17500 prohibits false or misleading statements made 'before the public in this state' and 'from this state before the public in any state.' In the instant action, none of defendant's written or oral communications made in California was directed to consumers outside the state. Thus, only California consumers can proceed on a claim under the FA[L]"), aff'd, 361 F.3d 566 (9th Cir. 2004).

"In determining whether the UCL . . . appl[ies] to non-California residents, courts consider

where the defendant does business, whether the defendant's principal offices are located in California, where class members are located, and the location from which [the relevant] decisions were made." *Toyota Motor Corp.,* 785 F.Supp.2d at 917.  Here, Warner alleges that he is a resident of Florida.[43] "[T]here does not appear to be any dispute that [Tinder] has its principal place of business in California.[44]  Accordingly, it is possible that the decision to [engage in the allegedly false and deceptive acts] emanated from California."  *Cannon v. Wells Fargo Bank N.A.*, 917 F.Supp.2d 1025, 1055-56 (N.D. Cal. 2013).  "The question, however, is whether it is *plausible* that [Tinder] did so; without additional facts suggesting that [Tinder made] the [advertising and other business] decision[s] from California (i.e., the tortious conduct occurred at least in part in California), the Court concludes it is not."  *Id.* (citing *Toyota Motor Corp.*, 785 F.Supp.2d at 917 (stating that "[p]laintiffs have not alleged with sufficient detail that the point of dissemination from which advertising and promotional literature that they saw or could have seen is California"); *Gustafson v. BAC Home Loans Serv'g, LP*, No. CV 11–915–JST (ANx), 2012 WL 4761733, *6 (C.D. Cal. Apr. 12, 2012) (concluding that plaintiff's allegation that defendants' scheme was devised, implemented, and directed from their offices in California was too conclusory; noting that the "mere possibility that certain decisions related to [defendants'] policies and practices regarding force-placed insurance may have been made in California does not, standing alone, justify application of the UCL to Plaintiff's claims"); *Gross v. Symantec Corp.*, No. CV 12–00154 CRB, 2012 WL 3116158, *7 (N.D. Cal. July 31, 2012) (noting that, while plaintiff had alleged that defendant was headquartered in California, "several courts have found that this allegation is not enough to create a plausible inference that the unlawful conduct emanated from that location," and ultimately finding the complaint insufficient because it did not allege state in which defendant's fraudulent conduct occurred – "because the fraudulent scheme materialized 'during the marketing and sale of [defendant's] computer software products,' [p]laintiff should allege that [defendant's] sales and marketing departments operate out of it[s] California offices"); *cf. Norwest*

---

[43]SAC, ¶ 6 ("Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because Plaintiff, a resident of the State of Florida").

[44]*Id.* ("Defendant, a company whose principal place of business and State of Incorporation are in the State of California").

1  *Mortgage, Inc.*, 72 Cal.App.4th at 227 (noting that the only contact was defendant's state of

2  incorporation – "[b]ecause Norwest Mortgage's headquarters and principal place of business, the place

3  Category III members were injured, and the place the injury-producing conduct occurred are outside

4  California, we conclude application of the UCL to the claims of Class III members would be arbitrary

5  and unfair and transgress due process limitations").

6       Because Warner does not adequately allege whether decisions concerning Tinder's business

7  practices and advertising emanated from California, and does not plead facts demonstrating that this is

8  so, his UCL claim fails.  Because he does not allege that he viewed any advertisements as a consumer

9  in California, his FAL claim similarly fails.  Warner should not replead these claims if he cannot,

10  consistent with Rule 11, cure these deficiencies.

11            **6.**     **Conclusion as to FAL and UCL Claims**

12       Warner fails plausibly allege to that Tinder misrepresented that the Tinder App was free.

13  Moreover, he fails to allege any injury in fact resulting from any misrepresentation or omission.  Finally,

14  because all of his other claims fail, Warner does not adequately allege unlawful conduct for purposes

15  of the UCL.  Warner's UCL and FAL claims must thus be dismissed.

16       **D.**     **Warner's EFTA and APRS Claims**

17            **1.**     **Whether Warner's APRS Claim Must Be Dismissed**

18       Tinder argues that Warner's APRS claim must also be dismissed because he is not a California

19  citizen.  The court agrees.  Section 17602(a) provides that it "shall be unlawful for any business making

20  an automatic renewal or continuous service offer to *a consumer in this state*" to engage in certain

21  conduct.  CAL. BUS. & PROF. CODE 17602(a) (emphasis added).  As alleged in the second amended

22  complaint, Warner is not a "consumer in this state."  "The Legislature employed specific language in

23  Section 17602 limiting recovery under [the APRS] to California consumers.  The court will not

24  contravene the Legislature's clear intention."  *Noll v. eBay Inc.*, No. CV 11-04585 EJD, 2013 WL

25  2384250, *6 (N.D. Cal. May 30, 2013) (dismissing an APRS claim with prejudice).  The APRS claim

26  therefore must be dismissed.

27

28

## 2.   Whether Warner's EFTA Claim Must Be Dismissed

Under the EFTA, "[a] preauthorized electronic funds transfer from a consumer's account may be authorized by a consumer only in writing, and a copy of such authorization shall be provided to the consumer when made." 15 U.S.C. § 1693e(a). A "preauthorized electronic fund transfer" is defined as "an electronic fund transfer authorized in advance to recur at substantially regular intervals." 12 C.F.R. § 1005.2(k). "Written authorization" from the consumer can be provided electronically. See *Berry*, 2011 WL 1375665 at *8 (citing 15 U.S.C. § 7006(5) ("The term 'electronic signature' means an electronic sound, symbol, or process, attached to or logically associated with a contract or other record and executed or adopted by a person with the intent to sign the record")).

Warner asserts, in conclusory fashion, that Tinder "has debited [his] and also the EFTA [s]ubclass members' bank accounts on a recurring basis without obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers from [his] and also the EFTA [s]ubclass members' accounts, thereby violating . . . the EFTA."[45] Specifically, he alleges that he "did not authorize [Tinder] to continue charging him $2.99" per month after he paid $19.99 for Tinder Plus at the time Tinder changed its payment policy. The problem with this allegation, however, is that Warner does not dispute that he initially agreed to purchase Tinder Plus for $2.99 per month.[46] While the complaint alleges that he "never provided Tinder written authorization to make [$2.99 monthly] deductions,"[47] it also references his "purchase of Tinder Plus for $2.99 per month."[48] Moreover, the complaint contains screen shots of the pop-up Warner allegedly saw during the application process; it states that a user can "Get Unlimited Likes with Tinder Plus for *$2.99/mo.*"[49] To the extent Warner alleges that he never agreed to pay $2.99 a month on a recurring basis for Tinder Plus, therefore, the complaint's allegations are inherently contradictory, which warrants dismissal of the EFTA claim. See

---

[45]*Id.*, ¶ 110.

[46]*Id.*, ¶ 61 (referencing a "prior purchase of Tinder Plus for $2.99 per month").

[47]*Id.*, ¶ 71.

[48]*Id.*, ¶ 61.

[49]*Id.*, ¶ 41 (emphasis added).

*Hernandez v. Select Portfolio, Inc.*, No. CV 15-01896 MMM (AJWx), 2015 WL 3914741, *10 (C.D. Cal. June 25, 2015) ("Contradictory allegations such as these are inherently implausible, and fail to comply with Rule 8, *Twombly,* and *Iqbal.*"); *Moenig v. Bank of Am., N.A.*, No. 14–CV–01399 KJM, 2015 WL 2185245, *4 (E.D. Cal. May 8, 2015) ("These contradictory factual allegations do not meet Rule 8's requirement of a 'short and plain statement'"); *Zamanyan v. Northland Group, Inc.*, No. CV 12–01212 MWF (JEMx), 2012 WL 2756644, *1 (C.D. Cal. July 9, 2012) ("Zamanyan's Complaint fails against all defendants because the contradictory nature of his factual allegations forecloses recovery").

To the extent Warner contends that his purchase of Tinder Plus for $19.99 canceled his prior recurring subscription of $2.99, or otherwise revoked his prior authorization to debit his account for this amount on a monthly basis, he alleges no facts concerning the Tinder Plus enrollment process that would permit the court to draw such an inference plausibly. Warner does not allege whether or not there were any disclosures during the enrollment process, or – if there were – the content of the disclosures and how they affect whether he provided authorization for electronic funds transfers. Consequently, the second amended complaint is too conclusory to state a claim for violation of the EFTA and must be dismissed. See See *Twombly*, 500 U.S. at 550; *Mountcastle v. SunTrust Bank*, No. CV MJG 12-0885, 2013 WL 588981, *4 (D. Md. Feb. 12, 2013) ("Without more than  conclusory statements, Plaintiff's Complaint fails to state a claim that SunTrust infringed upon the EFTA").

### E.    Whether Warner's Unruh Claim Must Be Dismissed

Warner also argues that Tinder discriminated him in violation of the Unruh Act by charging individuals over 30 years of age a higher price for Tinder Plus ($19.99) than people under 30 ($9.99). Tinder argues that Warner's Unruh Act claim must be dismissed because the statute applies only to discrimination occurring within California, i.e., it does not have extraterritorial reach. The Unruh Act protects "[a]ll persons within the jurisdiction" from certain enumerated forms of discrimination. Cal. Civ. Code § 51(b). Thus, by its own terms, it is expressly limited to discrimination that takes place within California's borders. See *Tat Tohumculuk, A.S. v. H.J. Heinz Co.*, No. CV 13-0773 WBS KJN, 2013 WL 6070483, *7 (E.D. Cal. Nov. 14, 2013) ("The Unruh Act, too, has limited geographic scope. Plaintiff contends that, because the alleged discrimination was approved by defendants' officers in

California, section 51 applies.  The plain language of the statute, however, regards access by "persons within the jurisdiction of" California.  Plaintiff has not presented any case law, nor is the court aware of any, applying section 51 to alleged discrimination suffered by parties outside California.  The Unruh Act, therefore, does not apply"); *Keum v. Virgin Am. Inc.*, 781 F.Supp.2d 944, 955 (N.D. Cal. 2011) ("The Unruh Act only applies to discrimination that takes place within California's jurisdiction"); *Loving v. Princess Cruise Lines, Ltd.*, No. CV 08-2898 JFW (AJWx), 2009 WL 7236419, *8 (C.D. Cal. Mar. 5, 2009) ("Plaintiffs' state law claims also do not have extraterritorial reach.  It is well-settled that the Unruh Act applies only within California," citing, e.g., *Archibald v. Cinerama Hawaiian Hotels,* Inc., 73 Cal.App.3d 152, 159 (1977) ("[The Unruh Act] by its express language applies only within California")); *Sousanis v. Northwest Airlines, Inc.*,  No. CV 99-2994 MHP, 2000 WL 34015861, *7 (N.D. Cal. Mar. 3, 2000) ("Quite the opposite, the Unruh Act contains language expressly limiting its reach to 'all persons within the jurisdiction of this state'").  The "complaint [does] not allege that [the discrimination against Warner] took place in California," which renders it subject to dismissal.  See *Keum*, 781 F.Supp.2d at 955.

## III.  CONCLUSION

For the reasons stated, the court grants Tinder's motion to dismiss with leave to amend.  See *In re Daou Sys., Inc.*, 411 F.3d 1006, 1013 (9th Cir. 2005) ("Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment"); *California ex rel. California Department of Toxic Substances Control v. Neville Chemical Co.*, 358 F.3d 661, 673 (9th Cir. 2004) ("[D]enial of leave to amend is appropriate if the amendment would be futile," citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Warner may file an amended complaint within twenty (20) days of the date of this order if he is able to remedy the deficiencies in the claims the court has noted.

Warner may not plead additional claims or add allegations that are not intended to cure the specific defects the court has noted.  Should any amended complaint exceed the scope of leave to amend granted by this order, the court will strike the offending portions under Rule 12(f).  See FED.R.CIV.PROC. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant,

immaterial, impertinent, or scandalous matter. The court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading."); see also *Barker v. Avila*, No. 2:09-cv-00001-GEB-JFM, 2010 WL 3171067, *1-2 (E.D. Cal. Aug. 11, 2010) (striking an amendment to federal law claim where the court had granted leave to amend only state law claims).

DATED: July 31, 2015

                              MARGARET M. MORROW
                         UNITED STATES DISTRICT JUDGE